UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
SPHERENOMICS GLOBAL CONTACT
CENTERS,

        Plaintiff,                                           03 CIV. 1682 (JO)

    -against-

VCUSTOMER CORPORATION,

        Defendant.
--------------------------------------------------------X

## DEFENDANT VCUSTOMER'S MEMORANDUM
## IN SUPPORT OF ITS MOTION IN LIMINE

Mark S. Landman, Esq.
LANDMAN CORSI BALLAINE & FORD P.C.
120 BROADWAY, 27TH FLR.
NEW YORK, N.Y. 10271
(212) 238-4800

*Attorneys for Defendant*

# TABLE OF AUTHORITIES

## CASES

Argus, Inc. v. Eastman Kodak Co., 612 F. Supp. 904 (S.D.N.Y. 1985) .......................... 7

Bausch & Lomb, Inc. v. Bressler, 977 F.2d 720 (2d Cir. 1992) .................................. 3

Benjamin v. Peter's Farm Condominiums Owners Associate,
820 F.2d 640 (3d Cir. 1987) ........................................................................................ 4

Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18 (2d Cir. 1996) ................................. 4

Coastal Aviation v. Commerce Aircraft Company, 937 F. Supp. 1051
(S.D.N.Y. 1996) ...................................................................................................... 3,7

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) ......................... 4

Elcock v. Kmart Corp., 233 F.3d 734 (3d Cir. 2000) ................................................ 4,5

Gumbs v. International Harvester, Inc., 718 F.2d 88 (3d Cir. 1983) ........................... 4

International Minerals and Resources v. Pappas, 761 F. Supp. 1068 (S.D.N.Y. 1991) ................. 3

John Quincy Adams Production Inc v. Public Broadcasting Communications, Inc.,
184 A.D.2d 434 (1st Dept.1992.) ................................................................................ 3

Kenford Co. v. County of Erie, 73 N.Y.2d 312 (1989) ............................................. 7,8

Kenford Company v. County of Erie, 67 N.Y.2d 257 (1986) .................................... 3,8

Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) .................................................. 4

Roane v. Greenwich Swim Committee, 330 F. Supp. 2d 306 (S.D.N.Y. 2004) ........... 6

Maimis-Knox Group Ltd. v. Grand Central Zocalo, LLC, 5 A.D.3d 129, 129-30 (1st Dept.
2004)(denying recovery in absence of proof that the partis had ever discussed economic
loss as a potential basis for damages) ......................................................................... 8

Supply & Building Co. v. Estee Lauder International, Inc.,
2001 WL 1602976 4, 5 (S.D.N.Y. 2001) ................................................................. 4,6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
SPHERENOMICS GLOBAL CONTACT
CENTERS,

           Plaintiff,                      03 CIV. 1682 (JO)

    -against-

VCUSTOMER CORPORATION,

           Defendant.
---------------------------------------------------------X

## DEFENDANT VCUSTOMER'S MEMORANDUM
## IN SUPPORT OF ITS MOTION IN LIMINE

### Preliminary Statement

Defendant vCustomer seeks an Order in limine barring plaintiff from offering damage testimony or other damage evidence that is based upon speculation, including, but not limited to, evidence about anticipated loss of profits. In addition, defendant seeks to exclude the opinion testimony of plaintiff's damage "expert", John G. Troiano, pursuant to Federal Evidence Rule 702, based upon his lack of qualifications, the unreliability of the proffered opinion and his resort to unsubstantiated speculation. Finally, Mr. Troiano's damage opinions should be excluded because they assert damage claims that were never contemplated by the parties.

### Factual Background

On or about October 4, 2002, Spherenomics was retained by a general merchandise retailer, Fingerhut, to provide telephone operators to answer customer calls and order requests. (See Stip. Nos. 4, 7).[1] Fingerhut was Spherenomics' first and only customer at the time the letter agreement

---

[1] "Stip. Nos." refers to the Stipulated Facts contained in the Joint Pretrial Order.

was entered into between Fingerhut and Spherenomics. (Stip. No. 8). Spherenomics only had three employees and thus retained other entities to provide the actual customer call services. Defendant vCustomer was brought in as one of those providers because the other entity initially retained by Spherenomics, Tracmail, was unable to handle the volume of calls occurring during the peak holiday season of 2002. (Stip. No. 11).

On December 31, 2002, Fingerhut sent a letter to Spherenomics terminating its letter agreement with it. The letter states "[t]his letter will serve to notify you that Fingerhut has decided to allow the Agreement to terminate as of [January 31, 2003] instead of seeking to extend it or replace it with a definitive successor agreement." (Stip. No. 13). Subsequent to the termination of Spherenomics, the services of vCustomer were retained directly by Fingerhut and based upon that arrangement, Spherenomics is alleging that vCustomer breached its Letter of Intent agreement with it.

Defendant contends that plaintiff will be unable to meet its burden of proof on any of its claims, but seeks an Order at the outset of the trial barring plaintiff from introducing widely speculative opinions about what its profit would have been, had it retained Fingerhut as a customer. Spherenomics claims it is entitled to lost future profits, but Spherenomics has no admissible evidence that it would have realized profits but for vCustomer's alleged breach of the letter of intent. Nor were such damages contemplated by the parties.

## I.     Speculative Damages Should Be Excluded

Generally, any allowance for lost profits must be based upon a reasonable basis in the evidence for determining that plaintiff has, in fact, suffered a loss of profits. See Bausch & Lomb, Inc. v. Bressler, 977 F.2d 720, 728 (2d Cir. 1992). New York law is clear, however, that if lost profits are being sought for a new business venture, such as Spherenomics, a stricter standard is imposed in establishing the amount of loss. See Coastal Aviation v. Commerce Aircraft Company, 937 F.Supp. 1051, 1065-1066 (S.D.N.Y. 1996)("we have found no case from a New York State Court permitting a recovery of lost profits to a 'new business'"); "International Minerals and Resources v. Pappas, 761 F.Supp. 1068, 1079 (S.D.N.Y. 1991)("The prospective profits of a new business or enterprise are regarded as being too remote, contingent, and speculative to meet the legal standard of reasonable certainty in determining the elements of recoverable damages in an action for breach of a contract or for a tort" citing 36 N.Y. Jur. 2d Damages § 110, at 193-94 (1984)). In this case, plaintiff must prove with **certainty** that profits were lost because of the alleged breach of the contract, because there is no experience from which lost profits may be estimated. See Kenford Company v. County of Erie, 67 N.Y.2d 257, 261 (1986). Accordingly, defendant seeks an order excluding any testimony about prospective profits that are too remote, contingent or speculative or that otherwise do not meet the certainty standards required. See John Quincy Adams Production Inc v. Public Broadcasting Communications, Inc., 184 A.D.2d 434 (1st Dept.1992.)(No merit to plaintiff's argument that court erred in instructing jury that plaintiff had to prove with certainty that profits were lost due to breach of contract.)

## II.     Mr. Troiano's Testimony Should Be Excluded

Courts consistently have held that expert economic testimony as to future economic loss should not be submitted to the jury where it is based on speculation or assumptions lacking a sufficient foundation in the record. See Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 22 (2d Cir. 1996) (holding that district court abused its discretion in permitting economist to testify regarding plaintiff's past and future lost earnings capacity based on unrealistic and speculative assumptions); Gumbs v. International Harvester, Inc. 718 F.2d 88, 98 (3d Cir. 1983)(economic testimony based on speculative assumptions is inadmissible); Benjamin v. Peter's Farm Condominiums Owners Assoc., 820 F.2d 640, 642, 43 (3d Cir. 1987) (setting aside a jury verdict because economic expert's testimony was a "castle made of sand" because it lacked "sufficient factual predicates"); Supply & Building Co. v. Estee Lauder International, Inc., 2001 WL 1602976 *4, 5 (S.D.N.Y. 2001) (holding that economist's testimony was based on speculation and unrealistic assurances and was therefore unreliable and inadmissible). As stated in Elcock v. Kmart Corp., 233 F.3d 734, 744 (3d Cir. 2000):

> a lost future earnings expert who rendered an opinion about a plaintiff's future economic harm based on economic assumptions not present in the plaintiff's case cannot be said to "assist the trier of fact" as Rule 702 requires. This type of an opinion misleads the fact-finder and arguably does not comply with the "fit" requirement of that Rule.

Id. at 756 n.13 (emphasis added).

In Daubert v. Merrell Dow Pharmaceuticals, Inc. 509 U.S. 579, 589 (1993), the Supreme Court held that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." (emphasis added). In Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 - 49 (1999), the Supreme Court "extended the rigorous gate keeping function assigned to

trial judges by Daubert . . . to cases involving non-scientific testimony." Elcock v. Kmart, 233 F.3d at 744.

In response to Daubert and its progeny, Rule 702 was amended to read as follows:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. (emphasis added)

As the proponent of the expert witness, plaintiff has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. Rule 702, Advisory Comm. Notes (2000 Amendments).

Under the amended rule, "[t]he trial judge in all cases of proffered expert testimony must find that it is properly grounded, well reasoned and not speculative before it can be admitted." Rule 702 Advisory Comm. Notes (2000 Amendments). Rule 702 "embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability and fit." Elcock, 233 F.3d at 741.

Mr. Troiano brings no special expertise to the valuation of the loss of alleged profits allegedly suffered by plaintiff. It appears he was retained in this matter primarily because he is both a social friend of plaintiff's counsel and shares office space with plaintiff's counsel. (Tr. 11-12)[2] Mr. Troiano is the CEO and only employee of Beekman Group, an entity that is looking to purchase

---

[2] References to "Tr." numbers refer to the deposition of John G. Troiano, attached to the Declaration of Mark S. Landman at Exhibit A. The Disclosure of Expert Witness Troiano is attached to the Landman Declaration at Exhibit B.

companies in the financial service and infrastructure industries. (Tr. 13, 16) It certainly is not clear what "specialized knowledge" Mr. Troiano can provide here. As in Supply & Building Co., 2001 WL 1602976 *4, "it seems a witness with expertise in accounting would seem to be more useful."

In preparing his report in this matter, Mr. Troiano looked at a profit and loss statement for 2003 of Spherenomics and discussed line items regarding the operation of the plaintiff with plaintiff's counsel. (Tr. 34). As explained by Mr. Troiano, his "methodology [does] not seem to rise to the level of intellectual rigor mandated by Rule 702." See Roane v. Greenwich Swim Committee, 330 F.Supp. 2d 306 (S.D.N.Y. 2004).

> Q. So you had a discussion with Mr. Mullaney about the line items?
>
> A. Yes.
>
> Q. And what - - happened during that discussion?
>
> A. It was in the context of, you know, are these - - is this operation and are these line items consistent with your knowledge of a call center operation.
>
> Q. And what did you say?
>
> A. I said, they - - they look- - they look to be the - - it looks to be the profit - and - loss statement or income statement of a call center operation.
>
> Q. Did you look at any underlying materials to determine the accuracy of the profit - and - loss statement that was presented to you?
>
> A. No.

(Tr. 34-35). In Supply & Building Co., the court excluded plaintiff's economist because, similar to Mr. Troiano's efforts, he did not review plaintiff's records but instead relied on his client's

conclusory statements. 2001 WL 1602976 *4. "Assumptions based on conclusory statements of the expert's client, rather than on the expert's independent evaluation are not reasonable." Argus, Inc. v. Eastman Kodak Co., 612 F. Supp. 904, 926 (S.D.N.Y. 1985). Certainly, discussions with plaintiff's counsel are not a sufficient foundation for a reliable analysis by a proffered expert.

A further review of Mr. Troiano's deposition will reveal that, at a minimum, this Court should conduct a brief Daubert hearing at the start of trial or an otherwise convenient time, to determine whether Mr. Troiano's anticipated testimony meets the requirements of Rule 702. (See, e.g., Tr. 36 - 40, 44 - 47, 90, 99-101). Such a hearing will reveal that Mr. Troiano lacks qualifications for his opinions and that those opinions lack sufficient foundation and are based upon speculation. Especially in the context of a new business such as Spherenomics, these opinions alleging lost profits should be excluded. See Coastal Aviation v. Commerce Aircraft Company, 937 F.Supp. at 1065-1066 (no case in New York permitting recovery of lost profits to a new business).

### III. Troiano's Speculative Damage Calculations Were Never Contemplated by the Parties

In addition to the reasons set forth above, Troiano's anticipated testimony that the lost value of the contract with Fingerhut is between $6 and $7 million (Exh. B, pp. 3-4, para. 15) should be excluded because such damages were never fairly contemplated by the parties at the time of contracting. See Kenford Co. v. County of Erie, 73 N.Y.2d 312, 319 (1989). The executed Letter of Intent[3] herein is completely silent on the issue of damages. In the absence of a contractual provision governing the availability of lost profits damages as a remedy for breach, New York law requires the Court "to consider what the parties would have concluded had they considered the

---

[3] The Letter of Intent is attached to the Landman Declaration at Exhibit C.

subject." Kenford Co. v. County of Erie, 67 N.Y.2d 257, 262 (1986). Plaintiff has the burden of proof on this issue, but it would be fanciful to suggest that defendant would agree to such extraordinary damage exposure in order to render services to Spherenomics for a mere three weeks, from November 29 through December 21, 2002. (Exh. C, p.1, "Duration & Commencement" section).

Accepting Mr. Troiano's calculations, solely for the purposes of this argument, would mean that for three weeks of work, defendant agreed to potential liability for at least ten times the **annual** claimed profit of plaintiff from the Fingerhut contract, even though plaintiff itself only had a sixteen-week agreement with Fingerhut, which was terminated after twelve weeks. Even if such speculation could ever overcome the hurdles of (1) New York law regarding lost profit projections for new businesses and (2) Rule 702's requirements, such lost profits never were contemplated by the parties. See Kenford Co. v. County of Erie, 73 N.Y.2d 312, 319-320 (1989) (in the absence of any remedy provision if there was a breach, "the commonsense rule to apply is to consider what the parties would have concluded had they considered the subject"):

> [T]he constant refrain which flows throughout the legion of contract cases dating back to the leading case of Hadley v. Baxendale (9 Exch. 341, 156 Eng. Rep. 145, supra) provides that damages which may be recovered by a party for breach of contract are restricted to those damages which were reasonably foreseen or contemplated by the parties during their negotiations or at the time the contract was executed. The evident purpose of this well-accepted principle of contract law is to limit the liability for unassumed risks of one entering into a contract and, thus, diminish the risk of business enterprise.

Id. at 321. This well-accepted principle should bar plaintiff's lost profit claims. See also Maimis-Knox Group Ltd. v. Grand Central Zocalo, LLC, 5 A.D.3d 129, 129-30 (1st Dept. 2004)(denying recovery in absence of proof that the parties had ever discussed economic loss as a potential basis

for damages).

## Conclusion

Accordingly, based upon the foregoing, defendant moves in limine to exclude speculative testimony regarding lost profits, including the entirely speculative testimony of Mr. Troiano.

Dated: New York, New York
July 15, 2005

                                  Respectfully submitted,

                                  LANDMAN CORSI BALLAINE & FORD P.C.

By: /s/ Mark S. Landman
            Mark S. Landman (ML 7654)
            Attorneys for Defendant vCustomer
            120 Broadway, 27th Floor
            New York, New York 10271-0079
            (212) 238-4800

## AFFIDAVIT OF SERVICE BY ELECTRONIC MAIL AND REGULAR MAIL

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

      **MICHELLE WEISS**, being duly sworn, deposes and says, that deponent is not a party to the action, is over 18 years of age and resides at STATEN ISLAND, NEW YORK.

      That on the 15th day of July 2005, deponent served the within **DEFENDANT VCUSTOMER'S MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE**

upon

> Thomas M. Mullaney, Esq.
> Law Offices of Thomas M. Mullaney
> Attorney for Plaintiff
> Spherenomics Global Contact Centers
> 708 Third Avenue, Suite 2500
> New York, N.Y. 10017
> (212) 223-0800
> tmm@mullaw.org

attorneys in this action, at the addresses designated by said attorneys for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States post office department within the State of New York.

                                                          _____
                                                          Michelle Weiss

Sworn to before me this
15th day of July 2005

_____
      Notary

REGINA CAJIGAS
Notary Public, State of New York
No. 01CA6032498
Qualified in Kings County
Commission Expires November 1, 20 05